■ In the Matter of EDWARD J. DOWMONT, Petitioner, v. VINCENT L. TOFANY, as Commissioner of the Department of Motor Vehicles, Respondent.— Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of Motor Vehicles suspending petitioner's New York State operator's license for a period of 150 days. Petitioner's license was suspended for a violation of section 1182 of the Vehicle and Traffic Law which violation allegedly occurred on November 14, 1970. Section 1182 prohibits races and contests for speed by motor vehicles on a highway without permission of the authorities having jurisdiction of the highway, and provides that a violation of the section shall constitute a misdemeanor. The basic issue in this proceeding is whether there is substantial evidence in the record to support the determination of the commissioner. On November 14, 1970, an automobile operated by Ronald Ross on Route 197 in Washington County went out of control, left the

highway, went over an embankment and came to rest upside down. Barabara Moon, a passenger in the automobile, was severely injured. After two hearings, the operator's license of Ross was suspended for 150 days. At the hearing held on November 17, 1971 in the proceeding to determine whether the operator's license of Ross should be suspended or revoked, testimony was given by Ross, Barbara Moon, Trooper Collins and petitioner. Ross testified that he was operating his automobile on Route 197 returning from Argyle, New York to Fort Edward, and as he entered a left curve in the highway, a vehicle approached from the opposite direction blinding him. He pulled to the right and both right wheels went on the shoulder, his tires caught the lip of the road causing him to go out of control. His automobile slid across the road, hit an embankment, and came to rest upside down. It was raining and dark at the time of the accident, and Ross had his headlights on and was operating his window wipers. He testified that there were no other cars driving in his direction at the time, either ahead of him or behind him, and that the only stop he had made prior to the accident was at a store in Kingsbury to buy some beer. He further denied that he talked with anyone in a yellow Plymouth Duster or with anyone concerning a drag race. Petitioner testified at the hearing held on November 17, 1971 as a subpoenaed witness, and further at a hearing held on February 14, 1973 in the proceeding under review in which he was the respondent. Petitioner testified that he owned a yellow Dodge Demon not a yellow Plymouth Duster; that he was at the Venus Tavern in Fort Edward at the time of the accident; that he did not know Ross on or before the date of the accident; and that he did not race with him on Route 197 on that date. Trooper Collins testified that he arrived at the scene after the accident, and that the weather was clear and the pavement dry; that he talked to Ross at the hospital that night and Ross told him he was "blinded by headlights and the car went off the road." At the hearing held on November 17, 1971 in the Ross proceeding, Barbara Moon testified as a witness. She testified that Ross picked her up at her home about two hours before the accident; that Ross stopped at a store where he purchased beer; that he then drove to Argyle and stopped at a gasoline station; that 10 minutes later he came out with another male who entered a yellow Duster; that Ross drove to the "Flats" on Route 197, and his car and the yellow Duster lined up and proceeded to race at high speed; that he stopped and turned around, went back to the starting point and repeated the race during which Ross was in the lead and lost control and the accident occurred. She testified that it was dark and raining at the time of the accident, and that just prior thereto a car approached the Ross car from the opposite direction, and that she made no objection to the race. She identified petitioner as the person who came out of the gasoline station in Argyle and drove the yellow Duster, but that she had never seen him before and did not know who he was. She was unable to describe the clothing that petitioner was wearing or where the gasoline station was located and the type of gasoline sold. She did testify that she saw petitioner in his car at the race when he was driving behind the Ross car. Matthew Wood testified on behalf of petitioner to the effect that they had met at a gasoline station about 5:00 P.M. and then drove to the Venus Tavern, and that they remained together about two hours until someone entered the tavern and told them of the accident, and they then motored to the accident scene. The hearing referee based his determination to suspend petitioner's license upon "the testimony of Barbara Moon regarding the description of the accident and her identification of Dowmont as one of the parties involved as a driver based on her identification of him at the hearing of Nov. 17, 1971." However, the testimony of Barbara Moon is unreliable to the extent that she had a hazy notion of what transpired,

and was unable to recollect events, and to observe in the first instance what occurred and who was operating the second car, if, in fact, there was a second car involved. She did not know petitioner and her testimony that she recognized petitioner in his car driving behind the Ross car on a dark night when it was raining is incredible. The description of the accident by Ross at the hearing, and as told to Trooper Collins within hours after the accident seemed to be far more credible. In addition, we must acknowledge a fact of life and that is that Barbara Moon was seriously injured, was 15 years of age at the time of the accident, and should be seeking compensation from whatever source is available. The testimony of Barbara Moon alone, in the face of the testimony of Ross, petitioner, Collins and Wood fails to meet the test of substantial evidence to support the determination to suspend petitioner's operator's license. (Cf. *People* v. *Grund,* 14 N Y 2d 32.) Petitioner also contends that he was denied a fair hearing since the referee in his determination used the testimony given at the November, 1971 hearing where Ross was respondent, and petitioner appeared only as a witness. While we agree that such procedure is subject to criticism, we do not find that petitioner was prejudiced thereby. He appeared and testified at the hearing in November, 1971 with his attorney present who participated fully in the hearing. His attorney cross-examined Ross, and also extensively cross-examined Barbara Moon on whose testimony the referee relied in reaching his determination. The referee's action was not so arbitrary or prejudicial to warrant a further hearing. Determination annulled, and petition granted, with costs. Staley, Jr., J. P., Cooke, Sweeney and Kane, JJ., concur; Reynolds, J., dissents and votes to confirm in the following memorandum: Reynolds, J. (dissenting). I dissent and vote to confirm on the ground that there are questions of fact and credibility which were for the Commissioner to resolve, and, on this record, there is substantial evidence to support his determination.